UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | CASE NO. 1:11-cv-00411-AWI-SMS |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS RECOMMENDING THE GRANT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| STEVEN CASTANON SORONDO. et al., | (Doc. 14) |
| Defendants. | |

Plaintiff J & J Sports Productions, Inc., moves for Entry of Default Judgment against Defendants Steven Sorondo and Starden, Inc., doing business as The Lamp Post bar. This Court has reviewed Plaintiff's motion and supporting documents and has determined that this matter is suitable for decision without oral argument pursuant to Local Rule 78-230(h). Having reviewed all written materials submitted and applicable law, the Court recommends that Plaintiff's motion be granted but that damages be set at an amount lower than the amount that Plaintiff requests.

**II.    Legal and Factual Background**

On March 9, 2011, Plaintiff filed its complaint against Defendants, alleging violations of 47 U.S.C. § 605, *et seq.*, and 47 U.S.C. § 553, *et seq.*, as well as claims under California state law. The allegations are based on Defendants' alleged unlawful interception, receiving, and exhibiting of "The Manny Pacquiao v. Joshua Clottey WBO Welterweight Championship Fight

///

1

1  Program" (the "program"), which was telecast on March 13, 2010.  Plaintiff was the exclusive
2  commercial distributor of the program.
3      The Lamp Post, a bar and restaurant, has a seating capacity of 75 persons.  At various
4  points on the evening of the broadcast, 45, 45, and 50 people were present.  No cover charge was
5  imposed on the night of the broadcast.  There were three televisions: two 24-inch sets and one
6  36-inch set.
7      The first cause of action for violation of 47 U.S.C. § 605 (Unauthorized Publication or
8  Use of Communications) alleges that Defendants knowingly intercepted, received, and exhibited
9  the program for purposes of direct or indirect commercial advantage or private financial gain.
10 Section 605 provides that a plaintiff may recover its actual damages or statutory damages not less
11 than $1000.00 nor more than $10,000.00, and if the violation was willful and for purposes of
12 direct or indirect commercial advantage or private financial gain, the damages may be enhanced
13 by an amount not more than $100,000.00 for each violation.  47 U.S.C. § 605 (e)(3)(C).
14     The second cause of action for violation of 47 U.S.C. § 553 (Unauthorized Reception of
15 Cable Services) is based upon the same allegations.  It provides that the plaintiff may recover its
16 actual damages and any profits resulting from Defendants' violation, or statutory damages "in a
17 sum not less than $250 or more than $10,000 as the court considers just."  47 U.S.C. § 553
18 (c)(3)(A)(I).  If the violation was committed willfully and for purposes of commercial advantage
19 or personal financial gain, the Court may increase damages by an amount of no more than
20 $50,000.00.  47 U.S.C. § 553 (c)(3)(B).
21     The third cause of action for conversion alleges that Defendants tortuously obtained
22 possession of the program and wrongfully converted it for their own benefit.  Plaintiff alleges
23 that these acts were willful and intentionally designed to harm Plaintiff and subject it to
24 economic distress.  The fourth count alleges a violation of Cal. Bus. & Prof. Code § 17200, *et*
25 *seq*., for which Plaintiff seeks restitution, declaratory and injunctive relief, as well as costs and
26 attorneys' fees.
27     In its motion, Plaintiff requests $110,000.00, the maximum statutory amount of statutory
28 damages and enhancements under 47 U.S.C. § 553 and 47 U.S.C. § 605.  It does not allot its

damages to specific statutes.  Plaintiff requests $1800.00, the licensing fee for the program for establishments the size of The Lamp Post, as damages for conversion.  The motion requests costs and attorney's fees.

## II.    Default Judgment

Federal Rule of Civil Procedure 55(b)(2) provides:

> (2) By the Court.  In all other cases the party entitled to judgment by default shall apply to the court therefor; but no judgment shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein.  If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application.  If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

"[U]pon default, the well pleaded allegations of the complaint relating to liability are taken as true." *Dundee Cement Co. v. Highway Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).  *See also TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).  Thus, "[a]t the time of entry of default, the facts alleged by the plaintiff in the complaint are deemed admitted." 10 J. Moore, *Moore's Federal Practice* § 55.11 (3d ed. 2000).

Pursuant to the proof of service filed with the court on June 16, 2011, both Defendants were served on May 31, 2011.  On July 7, 2011, the Clerk entered default against both Defendants.  Neither Defendant is an infant or incompetent person, or is in military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940.  Neither Defendant has appeared at any point in this action.  Accordingly, this Court recommends granting Plaintiff's motion for summary judgment.

## III.   Damages

Having accepted the well pleaded allegations of the complaint as true, Plaintiff is entitled to judgment based on Defendants' violation of 47 U.S.C. § 605 and 47 U.S.C. § 553 as well as the common law tort of conversion.  Plaintiff's challenge to this Court is determining the just amount of damages.

### A. Conversion

Under California law, the elements of conversion are (1) ownership or right to possession of the property; (2) wrongful disposition of that property right; and (3) monetary damages. *Krueger v. Bank of America*, 145 Cal.App.3d 204, 215 (1983). Because the license fee for an establishment the size of The Lamp Post would have been $1800.00, Plaintiff is entitled to $1800.00 in compensatory damages for the tort of conversion.

### B. Communications Act Violations

Based on the pleadings, Defendants are liable for violating 47 U.S.C. §§ 605 and 553, both of which prohibit the unauthorized interception and reception of cable television programming. Although some courts, including some in the Eastern District of California, have multiplied awards when a defendant is liable under both provisions, the majority of courts in the Ninth Circuit and elsewhere have imposed damages only pursuant to one of the two sections. *Joe Hand Promotions, Inc. v. Streshly*, 655 F.Supp.2d 1136, 1137-38 (S.D. Cal. 2009); *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F.Supp.2d 1196, 1197 (N.D. Cal. 2000); *G & G Closed Circuit Events, LLC v. Saddeldin*, 2010 WL 3036455 (E.D. Cal. August 2, 2010) (No. 1:10-cv-00062-AWI-SKO); *J & J Sports Productions, Inc. v. Cardoze*, 2010 WL 2757106 (N.D. Cal. July 9, 2010) (No. C 09-05683 WHA); *J & J Sports Productions, Inc. v. Rodriguez*, 2010 WL 796942 (E.D. Cal. March 5, 2010) (No. CIV S-08-1140 JAM DAD); *King Vision Pay-Per-View, LTD. v. Lavorico*, 2010 WL 796929 (E.D. Cal. March 5, 2010) (No. CIV S-08-1038 FCD DAD); *J & J Sports Productions, Inc. v. Ro*, 2010 WL 668065 (N.D. Cal. February 19, 2010) (No. C 09-02860 WHA); *J & J Sports Productions, Inc. v. Montecinos*, 2010 WL 144817 (N.D. Cal. January 11, 2010) (No. C 09-02604 JSW); *J & J Sports Productions, Inc. v. Canedo*, 2009 WL 4572740 (N.D. Cal. December 1, 2009) (No. C 09-01488 PJH); *Joe Hand Promotions, Inc. v. Carranza*, 2009 WL 4254460 (E.D. Cal. November 24, 2009) (No. 1:09-cv-0984 LJO DLB); *J & J Sports Productions, Inc. v. Miranda*, 2009 WL 3837273 (N.D. Cal. November 16, 2009) (No. C 09-1037 SI); *J & J Sports Productions, Inc. v. Betancourt*, 2009 WL 3416431 (S.D. Cal. October 20, 2009) (No. 08CV937 JLS (POR)); *Kingvision Pay-Per-View v. Guzman*, 2009 WL 1475722 (N.D. Cal. May 27, 2009) (No. C 09-00217 CRB); *J & J Sports Productions, Inc. v.*

*Cortes,* 2009 WL 801554 (N.D. Cal. March 25, 2009) (No. C 08-4287 CRB)*; J & J Sports Productions, Inc. v., Man Thi Doan*, 2008 WL 4911223 (N.D. Cal. November 13, 2008) (No. C-08-00324 RMW); *Entertainment by J & J, Inc. v. Perez*, 2000 WL 890819 (N.D. Cal. June 30, 2000) (No. C99-4261 THE); *Kingvision Pay-Per-View v. Arias*, 2000 WL 20973, n. 7 (N.D. Cal. January 7, 2000) (No. C 99-3017 SI); *Joe Hand Promotions, Inc. v. Pete,* 1999 WL 638215 (N.D. Cal. August 17, 1999) (No. C-99-0531-VRW).  Contra *Joe Hand Promotions, Inc. v. Villalobos,* 2009 WL 3011658 (E.D. Cal. September 17, 2009) (No. 1:09CV0297OWWDLB)*; Joe Hand Promotions, Inc. v. Gonzales*, 2009 WL 3011249 (E.D. Cal. September 17, 2009) (No. 1:09CV0496AWIDLB); *Joe Hand Productions, Inc. v. Haddock*, 2009 WL 2136117 (E.D. Cal. July 14, 2009) (No. 1:09CV0290LJODLB); *J & J Sports Productions, Inc. v. Flores*, 2009 WL 1860520 (E.D. Cal. June 26, 2009) (No. 1:08CV0483 LJO DLB); *Joe Hand Promotions, Inc. v. Tidmarsh*, 2009 WL 1845090 (E.D. Cal. June 26, 2009) (No. 109CV00097LJOGSA); *Joe Hand Promotions, Inc. v. Saddeldin*, 2010 WL 1992830 (E.D. Cal. May 14, 2010) (No. 109-CV-02129 AWI GSA); *Joe Hand Promotions, Inc. v. Morris,* 2010 WL 492214 (E.D. Cal. February 5, 2010) (No. 109CV01374AWISMS)*; J & J Sports Productions, Inc. v. Esquivel*, 2008 WL 4657741 (E.D. Cal. October 20, 2008), *report and recommendation adopted*, 2008 WL 4911846 (E.D. Cal. November 14, 2008) (No. 1:08CV00392LJOGSA); *J & J Sports Productions, Inc. v. George*, 2008 WL 4224616 (E.D. Cal. September 15, 2008), *report and recommendation adopted*, 2008 WL 4779501 (E.D.Cal. October 29, 2008) (No. 1:08-cv-00090-AWI-DLB); *J & J Sports Productions, Inc. v. Lopez*, 2008 WL 2915109 (E.D. Cal. July 25, 2008), *report and recommendation adopted,*, 2008 WL 3889749 (E.D. Cal. August 20, 2008) (No.1:08-cv-00388-OWW-TAG).[1]

Because the Ninth Circuit has not addressed this question, many district courts within the Ninth Circuit have relied in the Second Circuit's opinion in *International Cablevision, Inc. v. Sykes*, 997 F.2d 998 (2d Cir. 1993), *affirmed after remand*, 75 F.3d 123 (2d Cir.), *cert. denied*, 519 U.S. 929 (1996).  *See, e.g., Backman*, 102 F.Supp.2d at 1197; *Guzman*, 2009 WL 1475722;

---

[1] All of these cases awarded damages under both sections without discussing the propriety of cumulative damages for violations of both statutes.

*Cortes*, 2009 WL 801554. After an extensive review of the legislative history, the Second Circuit held that, when liability exists under both 47 U.S.C. § 553 and § 605, a court should impose damages only under § 605, which provides for greater damages than § 553. *See Sykes*, 997 F.2d at 1009.

Section 605 provides for recovery of statutory damages from $1000 to no more than $10,000. 47 U.S.C. § 605 (e)(3)(C). The Court determines the statutory damages award according to what it "considers just." *Backman*, 102 F.Supp.2d at 1198.

The Court also has the discretion to increase the damages award by up to $100,000 if the violation was willful and committed for purposes of direct or indirect commercial advantage or gain. 47 U.S.C. § 605 (e)(3)(C )(ii). "[T]he mere assertion that the defendant acted willfully is insufficient to justify enhanced damages." *Backman*, 102 F.Supp.2d at 1198. To establish "significant commercial advantage or private financial gain," a plaintiff must allege something more than the mere airing of a program, such as engaging in promotional advertising, imposing a cover charge, or charging a premium for food or drinks. *Id.* The size of the audience, the establishment, or both is also relevant to the measure of enhanced damages, as is whether the customers are present primarily to watch the broadcast or have come for another purpose while the program is being aired. *Id.* Awards should be proportional to the violation. *Id.* Higher statutory awards are indicated for repeat offenders. *Id.* at 1198-99.

Plaintiff's investigator described The Lamp Post as a neighborhood dive bar that is in poor condition. The relatively small sizes of the televisions in the Lamp Post (two 24-inch sets and one 36-inch set) are consistent with her characterization. Defendants imposed no cover charge for the program. Plaintiff does not contend that food or drink prices were increased, or that Defendants advertised the program.

Although The Lamp Post can seat 75 people, the largest number present while the program was on the televisions was 50. Headcounts on the night Defendants displayed the program were 45, 45, and 50, which is to say that, while Defendants were displaying the program, the restaurant was never full.

///

As the Court observed in *Streshly*: "[Defendant] may be the Blackbeard of pirates, but Plaintiff makes no attempt to portray it as such, and to the contrary, the act of piracy attributed to [Defendant] is as routine as they come . . . . . " 655 F.Supp.2d at 1139. Streshly's offense was more egregious that Defendants' in that Streshly's establishment appears to have been larger and Streshly advertised the bout. *Id.* Nonetheless, the court refused to enter default judgment, finding that the plaintiff overreached by seeking damages of $100,875. *Id.* Here, Plaintiff seeks $111,800.

Awarding the statutory maximum is inappropriate "in the absence of unusual or particularly egregious circumstances under which a defendant broadcast the fight." *Don King Productions/Kingvision v. Maldonado*, 1998 WL 879683 (N.D. Cal. December 11, 1998)(No. C-97-3530 WHO MED), *citing Joe Hand Promotions v. Burg's Lounge*, 955 F.Supp. 42, 44 (E.D. Pa. 1997). Nothing in the record suggests that Defendants experienced any significant "commercial advantage or private financial gain" as a result of its airing the program. There was no cover charge. Plaintiff does not allege that Defendants promoted their showing the program in any way or charged premium prices for food and drinks during the program. With its highest head count of the evening at fifty persons, showing the program produced minimal financial gain, if any. Although Plaintiff contends that Defendants also displayed another program for which Plaintiff held exclusive commercial rights, that allegation has not yet been adjudicated. This is case is Defendants' first adjudicated offense. In light of these facts, imposing the maximum statutory damages and enhancement would be inappropriate.

This Court recommends that the district court award only basic statutory damages for Defendants' violation of 47 U.S.C. § 605. Statutory damages awarded to first-time offenders in establishments of similar size have varied widely.[2] *See, e.g., Cardoze,* 2010 WL 2757106 (setting statutory damages of $1000 and enhanced damages of $250 in bar and grill with capacity of 150 people, and seven television sets where 37 to 45 people were present while bout was

---

[2] Higher damage awards are appropriate when defendants have previously pirated broadcasts. *See Saldeldin*, 2010 WL 3036455 (recommending $10,000 statutory damages, $30,000 enhancement, and $800 for conversion), and Guzman, 2009 WL 1475722 (awarding $6000 plus $2000 enhancement ($8000 total) for second offense by a San Francisco bar of unspecified size).

broadcast); *Rodriguez*, 2010 WL 796942 (setting statutory damages of $1000 and enhancements of $4000 for taqueria with seating capacity of 30 and 16 to 20 patrons during showing of bout); *Lavorico*, 2010 WL 796929 (recommending $1000 statutory damages and $5000 enhancement where 12- 26 patrons were present in sports bar and grill with ten televisions, and there was no promotion, cover charge, or food or drink premium); *Ro*, 2010 WL 668065 (ordering $250 in statutory damages); *Montecinos*, 2010 WL 144817 (recommending $5000 in statutory damages and $10,000 in enhanced damages where the defendants' bar had a capacity of 50 but only 18 to 30 people watched the pirated soccer match on a single television set); *Miranda*, 2009 WL 3837273 (ordering $1000 statutory damages); *Betancourt*, 2009 WL 3416431 (imposing statutory penalty of $2000 and $4000 enhancement where 60 viewers watched one television set in a restaurant with a 75-person capacity); *Guzman*, 2009 WL 1475722 (setting statutory damages at $6000 plus $2000 enhancement where there was no showing of egregious conduct); *Cortes*, 2009 WL 801554 (awarding statutory damages of $2000 plus enhancement of $6000); *Man Thi Doan*, 2008 WL 4911223 (awarding $2500 damages where so patrons watched fights on two televisions but defendants swore violation unintentional and had left the restaurant business); *Perez*, 2000 WL 890819 (awarding minimum statutory damages of $1,000 where defendant had capacity of 54 persons and highest number present during program was 27); *Arias*, 2000 WL 20973, n. 7; *Pete,* 1999 WL 638215 (awarding $1000 plus $5000 enhancement damages ($6000 total) where 8 patrons were present during showing); *Morris*, 2010 WL 492214 (recommending statutory damages and enhancements of $15,000 under Section 535 and $15,000 under Section 605); *J & J Sports Productions, Inc. v. Hernandez*, 2010 WL 1980186 (E.D. Cal. May 17, 2010), *report and recommendation adopted*, 2010 WL 2650526 (E.D. Cal. July 1, 2010) (No. 2:09-cv-3389 GEB KJN) (entering judgment for $10,000 in statutory damages, despite the plaintiff's request for $110,000, where 35 customers present during airing of unlicensed bout in restaurant); *Joe Hand Promotions, Inc. v. Ho*, 2009 WL 3047231 (N.D. Cal. September 18, 2009) (No. C-09-01435 RMW) (imposing $1000 statutory damages and $5000 enhancement where 17 patrons watched program, ten televisions were on the premises, and no evidence established that defendants advertised the program, charged a cover fee or required a minimum

8

purchase). *See also Joe Hand Promotions, Inc. v. Brown*, 2010 WL 2985459 (E.D. Cal. July 27, 2010) (No. Civ. S-10-0224 GEB DAD) (recommending $3000 statutory damages under Section 553, and $800 damages for conversion, for a defendant which displayed pirated bout on six 60-inch television screens to between 13 and 17 patrons, where the plaintiff had requested damages of $110,875); *Joe Hand Promotions, Inc. v. Olivera*, 2010 WL 2902344 (E.D. Cal. July 22, 2010) (No. CIVS-09-2501FCDDAD) (recommending $7500 in statutory damages for unlicensed showing of bout in the plaintiff's two Stockton establishments, each with one television, serving forty and ten customers respectively, despite the plaintiff's request for $110,000, in the absence of cover charge, food or drink premium, promotion of event); *Joe Hand Promotions, Inc. v. Pollard*, 2010 WL 2902343 (E.D. Cal. July 22, 2010) (No. CIVS-09-03155MCEDAD) (recommending damages of $5000 for first-time offender who neither advertised nor imposed a cover charge or increased food or drink prices, where 47 patrons were inside his lounge during screening of ultimate fighting bout on four 27-inch televisions, despite the plaintiff's request for $110,000 in statutory damages and enhancement). *See also Carranza*, 2009 WL 4254460 (recommending statutory damages of $10,000 and enhancement of $90,000 for display of the pirated bout in an urban sports bar with a 250-person capacity and nine flat screen televisions and one projections television, that charged a $10 cover). In some cases, courts have calculated damages by multiplying a reasonable cover charge by the actual number of patrons. *Backman*, 102 F.Supp.2d 1196 (16 patrons x $15 per seat plus $300 for possible future losses = $540). The amount that the licensing fee would have been had the establishment secured a license to show the program legally is another relevant consideration. *See Kingvision Pay-Per-View, Ltd. v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 1999) (affirming district court's determination, in the course of a Rule 59 motion, to reduce damages from $80,400 to $4,000 after judge learned that licensing fee would have been $3000 to $6000). *See also Canedo*, 2009 WL 4572740 (recommending that the plaintiff's damages be limited to its actual damages: the unpaid license fee).

As previously mentioned, the judge in *Streshly* was sufficiently angered by what he termed "cookie-cutter pleadings that trivialize the particular facts of this case and ignore the

9

voluminous case law that reveals its requested judgment to be so wildly out of the question" that the court dismissed the Plaintiff's motion and directed the Plaintiff to resubmit within one week a motion requesting reasonable damages, compliant with current case law, or have its case dismissed with prejudice. 655 F.Supp.2d at 1138.

Although Plaintiff in this case, represented by the same attorney as the Plaintiff in *Streshly*, has requested a manifestly excessive award in light of applicable law and facts, this Court declines to recommend that Plaintiff be provided another opportunity to justify its request for maximum statutory damages and the maximum statutory enhancement. In light of the size of both the establishment and the audience that viewed the program, this Court recommends that statutory damages be set at $3600.00. Combined with the $1800.00 conversion award, the total damages of $5400.00 represent three times Plaintiff's actual damages, equals a per capita charge of $108.00, and constitutes a severe fine on a neighborhood bar and restaurant such as The Lamp Post.

Finally, although the prayer for relief in the complaint and the application for default judgment indicate that Plaintiff seeks an award of costs and attorneys' fees, the application for default judgment contains no argument or evidence supporting thart request. Accordingly, the undersigned does not recommend an award of costs or attorneys' fees.

**IV.     Recommendation**

Accordingly, the Court **RECOMMENDS** that judgment be entered in this action against Defendants, and that the total amount of damages be fixed at a total amount of $5400.00, allocated $3600.00 for violation of 47 U.S.C. § 605 and $1800.00 for actual damages associated with the tort of conversion.

In addition, the Court directs Plaintiff to serve each Defendant with a copy of these Findings and Recommendations within five (5) days.

These Findings and Recommendations are submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 631(b)(1)(B) and Rule 305 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written

objections with the court, serving a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   September 5, 2011                          /s/ Sandra M. Snyder
                                                   UNITED STATES MAGISTRATE JUDGE